

**ENTERED**

JAN - 4 2002

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION    DEPUTY

Priority ✓
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK, US DISTRICT COURT

JAN - 2 2002

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION    BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HORPHAG RESEARCH LTD., | Case No. EDCV 00-00372-VAP (EEx) |
| Plaintiff, | |
| v. | **[Motion filed on September 17, 2001.]** |
| LARRY GARCIA dba Healthierlife.Com, | **ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** |
| Defendant. | |
| LARRY GARCIA dba Healthierlife.Com, | |
| Counter-claimant, | **THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).** |
| v. | |
| HORPHAG RESEARCH LTD. | |
| Counter-defendant. | |

The Court has received and considered all papers filed in support of, and in opposition to, Plaintiff's Motion for Attorneys' Fees.  The Motion is appropriate

//

//

ENTER ON ICMS

JAN - 4 2002

Docketed ✓
Copies / NTC Sent
JS - 5 / JS - 6
JS - 2 / JS - 3
CLSD ✓



1 | for resolution without hearing.  See Fed. R. Civ. P. 78;
2 | Local Rule 7-15.  For the reasons set forth below, the
3 | Motion is GRANTED in part.

4 |

5 | **I.   BACKGROUND**

6 | Plaintiff Horphag Research Ltd. filed a complaint
7 | against Defendant Larry Garcia alleging trademark
8 | violations under the Lanham Act, 15 U.S.C. §§ 1114 and
9 | 1125.  [Plaintiff's Complaint ("Pl.'s Compl.") at 23-24.]
10 | Plaintiff also brought state law claims under California
11 | Business and Professions Code §§ 17200 et seq. and 17500
12 | et seq.  [Id. at 35-43.]

13 |

14 | Defendant filed a Counterclaim seeking cancellation
15 | of Plaintiff's trademark registration and alleging unfair
16 | competition under the Lanham Act.  [Defendant's Third
17 | Amended Counterclaim ("Def.'s Third Am. Countercl.") at
18 | 34-37; Def.'s Amendment to Counter-Claimant's Third
19 | Amended Counterclaim at 5-7.]  Defendant further alleged
20 | common law unfair competition and violation of California
21 | Business and Professions Code §§ 17200 et seq. and 17500
22 | et seq.  [Def.'s Third Am. Countercl. at 38-49.]

23 |

24 | Defendant filed a summary judgment motion on May 1,
25 | 2000.  The court granted the motion in part, dismissing
26 | Plaintiff's federal and state unfair competition claims.
27 | //
28 | //

2

1  [Order dated July 24, 2000 at 20-21.]  The Court denied

2  the motion insofar as it sought judgment on Plaintiff's

3  trademark infringement and dilution claims.  [Id. at 21.]

4

5      On July 27, 2001, following four days of jury trial,

6  the Court granted Plaintiff's Motion for Judgment as a

7  Matter of Law on its Lanham Act claims for trademark

8  infringement and dilution, and on Defendant's

9  counterclaims.  [Order dated July 27, 2001.]  The Court

10  entered final judgment in favor of Plaintiff on all

11  claims and counterclaims on August 29, 2001.  [Judgement

12  dated August 28, 2001 at 2-3, 6.]

13

14      Plaintiff filed this Motion for Attorneys' Fees and

15  Costs, along with supporting declarations, on September

16  17, 2001.  Defendant filed Opposition with supporting

17  declarations on September 24, 2001.  Plaintiff filed a

18  Reply on October 4, 2001.

19

20                    **II.   LEGAL STANDARD**

21      Under the attorneys' fees provision of the Lanham

22  Act, 15 U.S.C. § 1117(a) (emphasis added):

23      [w]hen a violation of any right of the
        registrant of a mark registered in the Patent
24      and Trademark Office, a violation under section
        1125(a), (c), or (d) of this title, or a willful
25      violation under section 1125(c) of this title,
        shall have been established in any civil action
26      arising under this chapter, the plaintiff shall
        be entitled ... to recover (1) defendant's
27      profits, (2) any damages sustained by the

28  //

                              3

1  plaintiff, and (3) the cost of the action.... *The
2  court in exceptional cases may award reasonable
   attorney fees to the prevailing party.*

3  The analysis of a request for attorneys' fees is
4  twofold.  First, the Court must determine whether or not
5  the case at bar is "exceptional."  <u>Gracie v. Gracie</u>, 217
6  F.3d 1060, 1068 (9th Cir. 2000); <u>Intel Corp. v. Terabyte</u>
7  <u>Int'l., Inc.</u>, 6 F.3d 614, 621-22 (9th Cir. 1993).
8  Second, the Court determines whether or not the amount
9  requested is reasonable.  <u>Gracie</u>, 217 F.3d at 1070-71;
10 <u>Intel Corp.</u>, 6 F.3d at 622-23.

11

12                    **III.  DISCUSSION**
13 **A.  "Exceptional" Case**
14    **1.  Plaintiff's Claims**

15 "While the term 'exceptional' is not defined in the
16 statute, generally a trademark case is exceptional for
17 purposes of an award of attorneys' fees when the
18 infringement is malicious, fraudulent, deliberate, or
19 willful."  <u>Gracie</u>, 217 F.3d at 1068 (citing <u>Lindy Pen Co.</u>
20 <u>v. Bic Pen Corp.</u>, 982 F.2d 1400, 1409 (9th Cir. 1993);
21 <u>Sealy, Inc. v. Easy Living, Inc.</u>, 743 F.2d 1378, 1384
22 (9th Cir. 1984); <u>Playboy Enterprises, Inc. v. Baccarat</u>
23 <u>Clothing Co., Inc.</u>, 692 F.2d 1272, 1276 (9th Cir. 1982)
24 (citation omitted).  In addition, "[e]xceptional
25 circumstances can be found when the non-prevailing
26 party's case is 'groundless, unreasonable, vexatious, or
27 //
28 //

4

1  pursued in bad faith.'"  <u>Gracie</u>, 217 F.3d at 1071

2  (citation omitted).  This standard applies both to

3  prevailing plaintiffs and prevailing defendants.  <u>Id.</u>

4

5      The present case is an "exceptional" one under this

6  definition.  <u>See</u> <u>id.</u> at 1068, 1071.  A willful or

7  deliberate infringement is sufficient to support a

8  district court's discretionary finding that a case is

9  exceptional.  <u>See</u> <u>Sealy, Inc.</u>, 743 F.2d at 1384-85;

10  <u>Playboy Enterprises., Inc.</u>, 692 F.2d at 1276.  In <u>Sealy,</u>

11  <u>Inc.</u>, plaintiff was an association of bed manufacturers

12  which owned the "Sealy" trademark.  It sued the

13  defendants for infringement for selling genuine Sealy

14  mattresses in combination with the defendants' non-Sealy

15  foundations, which were covered with fabric identical to

16  that on the authentic Sealy mattresses.  <u>Sealy, Inc.</u>, 743

17  F.2d at 1381.  Selling the mattresses and foundations

18  together in this fashion created an impression to the

19  public that they were a matched set.  <u>Id.</u>  After a non-

20  jury trial, the district court found the sale of the

21  "look-alike" foundations to be a "willful and deliberate,

22  bad faith infringement of Sealy's trademarks that was

23  intended to and in fact did result in deception of the

24  public."  <u>Id.</u> at 1384.  Therefore, it deemed the case

25  "exceptional" and awarded attorneys' fees to the

26  plaintiff.  <u>Id.</u> at 1384-85.  The Ninth Circuit affirmed

27  this finding on appeal, holding that the district court

28  had not abused its discretion in awarding fees.  <u>Id.</u>

1    Defendant Garcia's deliberate and willful
2   infringement of Plaintiff Horphag's trademark is similar
3   to the conduct sanctioned by the Sealy court.  Defendant
4   used Plaintiff's registered trademark PYCNOGENOL as a
5   metatag in his many websites.  Defendant expressly
6   admitted that he intended for his websites to gain
7   priority in an Internet search for "PYCNOGENOL."  This
8   gave Internet searchers the false impression that the
9   products sold on his websites were either Plaintiff's
10  product, products identical to Plaintiff's product, or
11  products approved by Plaintiff.  [Plaintiff's Motion for
12  Attorneys' Fees ("Pl.'s Mot.") at 6; Transcript of
13  Proceedings dated July 27, 2001 ("Transcript") at 102-
14  103.]

15

16    Furthermore, Defendant Garcia diluted Plaintiff's
17  trademark by using the latter's trademark, after it
18  became famous, on his own websites to refer to the
19  products he was selling.  Defendant did this without
20  identifying Plaintiff's trademark or product to those
21  visiting the websites.  In doing so, he diminished the
22  ability of Plaintiff's trademark to identify and
23  distinguish Plaintiff's product from ones being sold by
24  Defendant.  [Id.]

25

26    Just as the Sealy defendants were not innocent
27  infringers, neither was Defendant Garcia an innocent who
28  was confused concerning the existence of Plaintiff's

1  trademark.  Rather, Defendant had full knowledge of the
2  existence of Plaintiff's mark and purposely used it to
3  draw potential customers to his websites and sell his
4  products.  See Playboy Enterprises, Inc., 692 F.2d at
5  1276 (knowingly infringing famous trademark to sell
6  counterfeit jeans constituted "exceptional" actions).
7
8       Therefore, Defendant's willful and deliberate
9  infringement of Plaintiff's trademark renders this case
10 an exceptional one, meriting imposition of attorneys'
11 fees against him.
12
13     **2.  Defendant's Counterclaims**
14      This case also is "exceptional" with respect to
15 Defendant's counterclaims.  See Gracie, 217 F.3d at 1071.
16 A case is exceptional, as to either prevailing plaintiffs
17 or prevailing defendants, if the non-prevailing party's
18 case is "groundless, unreasonable, vexatious, or pursued
19 in bad faith."  Stephen W. Boney, Inc. v. Boney Services,
20 Inc., 127 F.3d 821, 827 (9th Cir. 1997) (citation
21 omitted).  In Boney, the prevailing defendant's request
22 for attorneys' fees was denied by the district court
23 because the losing plaintiff's claims "raised debatable
24 issues of law and fact" supported by the record.  Id.
25 Unlike the losing plaintiff in Boney, however, Defendant
26 here failed to submit any evidence in support of several
27 required elements of his counterclaims, including
28 damages.  [Transcript at 109-113.]  This reveals the

1 groundless nature of his counterclaims.  The Court
2 accordingly finds this case "exceptional" with respect to
3 Defendant's counterclaims.

4

5      **3.  No Requirement of Bad Faith**

6      In opposing a finding that this case is exceptional,
7 Defendant erroneously argues that a finding of bad faith
8 is required for an award of fees under the Lanham Act.
9 [Defendant's Opposition to Plaintiff's Motion for
10 Attorneys' Fees ("Opp'n") at 1.]  Defendant is incorrect.
11 "[M]ere absence of bad faith" does not preclude a
12 prevailing party from receiving attorneys' fees.  <u>Boney</u>,
13 127 F.3d at 827.  Furthermore, although Defendant relies
14 on the <u>Gracie</u> court's statement that "[e]xceptional
15 circumstances can be found when the non-prevailing
16 party's case is 'groundless, unreasonable, vexatious, *or*
17 pursued in bad faith," in doing so he ignores the court's
18 use of the disjunctive.  <u>Gracie</u>, 217 F.3d at 1071
19 (emphasis added).

20

21      Moreover, Defendant contends that attorneys' fees
22 should not be awarded because he acted in good faith.
23 [Opp'n at 3-4.]  In the Ninth Circuit, however, the
24 district court is not required to perform a "good faith"
25 analysis when awarding attorneys' fees under the Lanham
26 Act.  <u>See</u> <u>Gracie</u>, 217 F.3d at 1068-71; <u>Sealy, Inc.</u>, 743
27 F.2d at 1384.  A willful or deliberate violation of
28 Plaintiff's trademark is sufficient to find a case

1   "exceptional" and support a fees award. <u>Id.</u>  In any
2   event, this Court actually found that Defendant's use of
3   Plaintiff's trademark as a metatag was *not* in good faith.
4   [Order dated July 24, 2001 at 10-11.]

5

6       **4.   No Requirement for Jury Verdict**

7       Defendant also asserts that a jury verdict is
8   required for an attorneys' fees award.   [Opp'n at 2.]
9   Again, he is incorrect.  The authorities cited by
10  Defendant do not hold that a court cannot award
11  attorneys' fees when judgment is granted as a matter of
12  law rather than upon a jury's verdict.  In fact, the
13  Ninth Circuit has upheld fee awards based, for example,
14  on nonjury verdicts.  <u>See</u> <u>Intel Corp.</u>, 6 F.3d at 622;
15  <u>Sealy, Inc.</u>, 743 F.2d at 1381 (fees awarded after nonjury
16  trials).

17

18      **5.   Plaintiff Did Not Waive Right to Attorneys' Fees**
19      Finally, Defendant argues that Plaintiff waived its
20  right to request attorneys' fees.  [Opp'n at 2.]   The
21  record belies this assertion.  Plaintiff's counsel
22  revealed its intent to seek attorneys' fees at the
23  hearing on the motion for judgment as a matter of law,
24  and the Court acknowledged this request in instructing
25  that the proposed judgment submitted by Plaintiff should
26  leave blank the provision for attorneys' fees pending the
27  outcome of the expected motion.   [Transcript at 120.]
28  //

1     Accordingly, the Court finds this case "exceptional"
2   withing the meaning of the Lanham Act fees provision.
3
4   **B.  Reasonable Attorneys' Fees**
5     Plaintiff seeks $1,000,187.03 in fees and costs.
6   [Pl.'s Mot. at 1.]  This amount includes the following:
7   (1) 1,665.15 hours of partner time, at an average hourly
8   rate of $347.63; (2) 1,433.89 hours of associate attorney
9   time, at an average hourly rate of $217.46; and (3) 31.65
10  hours of paralegal and non-lawyer time, at an hourly rate
11  of $75.00.  [Id. at 14.]  In total, Plaintiff seeks an
12  attorneys' fees award of $893,037.65.  [Id. at 1.]
13
14     In support of its fee request, Plaintiff provides an
15  itemized summary of the work done on the case, as well as
16  all of the time records kept by counsel.  [Pl.'s Mot. at
17  11-13; Ex. 1 to Declaration of Marvin S. Gittes in
18  Support of Plaintiff's Motion for Attorneys' Fees and
19  Costs ("Gittes Decl.").]
20
21     In setting attorneys' fees, "the district court must
22  first determine the presumptive lodestar figure by
23  multiplying the number of hours reasonably expended on
24  the litigation by the reasonable hourly rate."  Intel
25  Corp., 6 F.3d at 622.  Next, the Court "may adjust the
26  'presumptively reasonable' lodestar figure based upon the
27  //
28  //

1 | factors listed in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526
2 | F.2d 67, 69-70 (9th Cir. 1975), that have not been
3 | submitted in the lodestar calculation." <u>Id.</u>
4 |
5 |     Plaintiff contends that the hours and rates
6 | submitted to the Court are reasonable under the
7 | "lodestar" analysis. [<u>See</u> <u>id.</u> at 9-14.] In calculating
8 | the lodestar, the Court may "subsum[e]" certain factors
9 | such as "the novelty and complexity of the issues, the
10 | special skill and experience of counsel, the quality of
11 | representation, the results obtained and the superior
12 | performance of counsel." <u>D'Emanuele v. Montgomery Ward &</u>
13 | <u>Co., Inc.</u>, 904 F.2d 1379, 1383 (9th Cir.1990) (citations
14 | omitted). In determining the fee amount, however, the
15 | Court cannot rely simply on the summary of hours spent on
16 | a case submitted by the party seeking a fee. <u>Gracie</u>,
17 | 217 F.3d at 1070. Instead, the Court must analyze the
18 | "time records actually presented" by the Plaintiff to
19 | determine the reasonableness of the hours and rates
20 | tendered. <u>Id.</u>
21 |
22 |     Plaintiff contends that Defendant's failure to make
23 | specific challenges regarding the reasonableness of the
24 | requested fee entitles Plaintiff to receive the full
25 | amount it originally requested. [Plaintiff's Reply
26 | Memorandum in Further Support of Its Motion for
27 | Attorneys' Fees and Costs ("Reply") at 7-8.] Although
28 | the non-Ninth Circuit cases cited by Plaintiff support

1  this position, Ninth Circuit authority requires a
2  district court to examine the material underlying the
3  requested fee award and calculate a reasonable lodestar
4  amount in Lanham Act cases in which attorneys' fees are
5  sought.  <u>Gracie</u>, 217 F.3d at 1070; <u>Intel Corp.</u>, 6 F.3d at
6  623.  This requirement applies even if the opposing party
7  has failed to make specific challenges to the fees being
8  sought.  <u>See</u> <u>id.</u>
9
10     The Court has reviewed every billing entry submitted
11  by Plaintiff in support of its fee request. After doing
12  so, the Court finds it appropriate to reduce the fees
13  requested by Plaintiff.
14
15     The Court finds the rates charged by Plaintiff are
16  reasonable in light of the 1999 Report of Economic Survey
17  from the American Intellectual Property Law Association
18  ("AIPLA Report"), and in light of the factors enunciated
19  by the <u>Kerr</u> court.  Adjustments to the number of hours
20  billed by the Plaintiff, however, are necessary.
21
22     After careful review and analysis of all time entries
23  for Plaintiff's attorneys, the Court has reduced the fees
24  to deduct for time spent on issues upon which Plaintiff
25  did not prevail, including, for example, some of
26  Plaintiff's state law theories which ultimately failed on
27  Defendant's summary judgment motion.  Similarly, the
28  Court deleted amounts for time billed for Plaintiff's

1  Motion for Preliminary Injunction, and the unsuccessful
2  appeal of the Court's Order denying that motion.  The
3  Court also deleted fees incurred for time Plaintiff spent
4  on irrelevant issues or for tasks upon which excessive
5  time was spent, such as RICO theories, patent
6  infringement, trial time for a third attorney, and the
7  entry for a "Markman" hearing on August 1, 2001.

8

9      Accordingly the Court reduces Plaintiff's requested
10 attorneys' fee amount by $187,826.58 to reach the
11 "presumptively reasonable" lodestar amount of
12 $705,216.98.[1]  See Intel Corp. 6 F.3d at 622.
13 Furthermore, the Court finds that there is no need to
14 adjust this figure by the Kerr factors.  See D'Emanuele,
15 904 F.2d at 1383 (finding Kerr adjustments are exception
16 rather than rule since lodestar amount presumed to be
17 reasonable fee).

18

19 C.  Costs
20     Under 15 U.S.C. § 1117(a), "the award of monetary
21 remedies in trademark infringement cases includes an
22 award of defendant's profits, and damages sustained by
23 plaintiff, and the cost of the action."  Intel Corp., 6
24 F.3d at 620 (citation omitted).   Plaintiff seeks

25

26     [1]  Although Plaintiff initially requested $893,037.65
27 in attorneys' fees, Plaintiff cites $893,043.56 as the
   lodestar calculation.  [Pl.'s Mot. at 14.]  The Court
28 adopts the lodestar amount as Plaintiff's initial
   request.

1 $107,149.38 in non-taxable costs.   [Mot. for Fees at 1.]
2 Defendant argues that Plaintiff's request for costs in
3 connection with Plaintiff's computer-display system,
4 Plaintiff's attorneys' travel time, and Plaintiff's
5 hiring of local counsel are excessive and unnecessary.
6 [Opp'n at 5.]
7
8     The Court finds that Plaintiff's request is
9 reasonable.   Local Rule 83-2.3.3 (previously Local Rule
10 2.2.3.3) requires the retention of local counsel if a
11 person seeks to appear pro hac vice.   Thus, in order to
12 be represented by its New York attorneys in this Court,
13 Plaintiff was required to retain local counsel.   In
14 addition, Local Rule 54-4.13(a) (previously Local Rule
15 16.4.13) allows recovery of costs associated with "maps,
16 charts, diagrams, and other visual aids reasonably
17 necessary to assist the jury or the Court in
18 understanding the issues at the trial."   The Court has
19 examined Plaintiff's documents in support of its cost
20 request, and finds the requested amount reasonable.   The
21 Court accordingly awards Plaintiff's requested non-
22 taxable cost of $107,149.38.
23 //
24 //
25 //
26 //
27 //
28 //

1

## IV.  CONCLUSION

2      For the aforementioned reasons, Plaintiff's Motion

3 for Attorneys' Fees and Costs is GRANTED.  This case is

4 "exceptional" within the meaning of the Lanham Act fees

5 provision, and therefore, Plaintiff is entitled to

6 $705,216.98 in attorneys' fees and $107,149.38 in non-

7 taxable costs, for a total award of $812,366.36.

8

9 IT IS SO ORDERED.

10

11

12 Dated: January 2, 2002

13                              VIRGINIA A. PHILLIPS
                          United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28