



Priority
Send
Enter
Closed
JS-5/JS-6 ——
JS-2/JS-3 ——
Scan Only——



FILED
CLERK U S DISTRICT COURT

JAN 2 2 2004

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION      BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HORPHAG RESEARCH LTD , )<br>           )<br>          Plaintiff, )<br>           )<br>    v.     )<br>           )<br>LARRY GARCIA dba )<br>Healthierlife.Com, MARIO )<br>PELLEGRINI dba )<br>Healthdiscovery Com; )<br>LARRY GARCIA dba )<br>Healthierlife Com )<br>[counter-claimant] v )<br>HORPHAG RESEARCH LTD )<br>[counter-defendant] , )<br>           )<br>          Defendants )<br>           ) | Case No   EDCV 00-00372-VAP<br>(MLGx)<br><br>**[Motion filed on November 24, 2003.]**<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).** |

     The Court has received and considered all papers
filed in support of, and in opposition to, Plaintiff's
Motion for Summary Judgment   The Motion is appropriate
for resolution without oral argument.  <u>See</u> Fed  R  Civ
P. 78, Local Rule 7-15   For the reasons set forth below,
Plaintiff's Motion is GRANTED



DOCKETED ON CM

JAN 23 2004

BY          041



354

1

## I.   BACKGROUND [1] AND PROCEDURAL HISTORY

2      In 1987, Plaintiff Horphag Research, Ltd  ("Horphag")

3   began selling bulk quantities of pine bark extract under

4   the trademark "Pycnogenol" to pharmaceutical companies

5   and distributors in the United States, which packaged the

6   product as pills and sold them to the public   Horphag

7   applied for registration of the trademark Pycnogenol in

8   1990, and in May 1993, the United States Patent and

9   Trademark Office granted Horphag registration number

10  1,769,633.   Horphag has not authorized any other

11  individual or entity to use its mark

12

13      Defendant Larry Garcia has used the Internet site

14  "healthierlife.com," among others, to advertise and sell

15  various health aids, including Pycnogenol   Mr  Garcia

16  has not distributed products manufactured by Horphag

17  since February 1999, but, Mr  Garcia asserts, he now

18  sells a product derived from grape pit seeds which

19  competes with Horphag's pine bark based supplement   Mr

20  Garcia repeatedly used Horphag's trademark "Pycnogenol"

21

22

23

24

25  _____

26      [1] The background facts are substantially similar to
    those appearing in the Court's July 24, 2000 Order
27  granting in part and denying in part Defendant's Motion
    for Summary Judgment and the July 29, 2003 Opinion issued
28  by the Ninth Circuit

1 as a "metatag,"[2] allegedly in order to compare his

2 product to Horphag's

3

4     On June 18, 1999, Horphag filed an action against Mr

5 Garcia alleging trademark infringement, false designation

6 of origin, and trademark dilution under federal law, as

7 well as trademark dilution and unfair competition under

8 California law  The Court granted summary judgment in

9 favor of Mr  Garcia on the claim of false designation of

10 origin only  [July 24, 2000 Order ]  A jury trial was

11 held on the remaining claims from July 24 through 27,

12 2001.

13

14     On July 27, 2001, after both sides rested their

15 respective cases and before the case was submitted to the

16 jury, this Court granted Horphag's motion for judgment as

17 a matter of law under Federal Rule of Civil Procedure

18 50(a)  The Court held that Mr  Garcia infringed and

19 unlawfully diluted Horphag's trademark, Pycnogenol

20 Judgment was entered in Horphag's favor on August 28,

21 2001.  On August 15, 2001, Mr  Garcia filed a motion for

22 _____

23     [2] A metatag is used by Internet search engines (such
as Google.com and Yahoo.com) as an indexing tool to
24 determine which websites correspond to the search terms
provided by a user  Mr  Garcia objects to the Court's
25 consideration of metatags in the context of this Motion
because, he argues, the metatags in his websites are only
26 relevant to the claim of trademark infringement  [See
Opp'n at 13 14-22 ]  Horphag has argued, however, that
27 Mr  Garcia's use of the metatags contributed to the
trademark's dilution  [See Mot  at 15·13-24·5 ]  They
28 are therefore relevant

1  reconsideration under Federal Rule of Civil Procedure
2  59(e).  The Court denied the motion on September 14,
3  2001  On January 4, 2002, the Court awarded attorneys'
4  fees to Horphag.
5
6      Mr  Garcia appealed the judgment as a matter of law
7  and also challenged the award of attorney's fees   On
8  July 29, 2003, the Ninth Circuit Court of Appeals issued
9  an amended opinion affirming this Court's judgment in
10 favor of Horphag, "except with respect to the trademark
11 dilution claim "  Horphag Research, Ltd  v  Garcia, 337
12 F 3d 1036, 1042 (9th Cir  2003)   The appeals court
13 vacated the judgment on trademark dilution and remanded
14 to this Court for reconsideration of that claim in light
15 of Moseley v  V Secret Catalogue, Inc , 537 U S  418
16 (2003).  Id   This Court was further directed to
17 reconsider the portion of its attorneys' fees analysis
18 related to the dilution claim   Id [3]
19
20     On November 24, 2003, Horphag filed a "Motion for
21 Summary Judgment and Reconsideration of its Claim for
22 Trademark Dilution and Reinstatement of Attorneys' Fees
23 Corresponding to its Dilution Claim" ("Mot ")   On
24 December 8, 2003, Mr. Garcia filed an Opposition
25 _____

26     [3] Mr  Garcia filed a petition for a Writ of
   Certiorari to the United States Supreme Court on November
27 20, 2003.  The petition was denied on January 12, 2004
   See Garcia v  Horphag Research, Ltd , No  03-773, 2004 WL
28 46767 (Jan  12, 2004)

("Opp'n).  On December 11, 2003, Horphag filed a Reply
("Reply")

## II.   ORDER TO RECONSIDER

### A.   ISSUE BEFORE THE COURT

On remand, only Horphag's federal trademark dilution
claim and the reinstatement of the corresponding
attorneys' fees are before the Court   Horphag, 337 F 3d
at 1041.   The Ninth Circuit affirmed the Court's judgment
in favor of Horphag on its federal trademark infringement
claim, as well as the California trademark dilution and
unfair competition claims   Id  at 1042   The Ninth
Circuit vacated only the federal trademark dilution claim
and remanded it "for reconsideration in light of the
Supreme Court's recent decision in Moseley," which
"expanded on the requirements for a trademark dilution
claim under the Federal Trademark Dilution Act "  Id  at
1041

A federal trademark dilution claim arises under the
Federal Trademark Dilution Act ("FTDA"), 15 U S C  §
1125, which provides in relevant part.

> The owner of a famous mark shall be entitled,
> subject to the principles of equity and upon
> such terms as the court deems reasonable, to an
> injunction against another person's commercial
> use in commerce of a mark or trade name, if such

///

///

use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection

15 U.S.C. § 1125(c)(1)

Prior to _Moseley_, the Ninth Circuit set forth the elements of a claim for trademark dilution in _Avery Dennison Corp. v. Sumpton_, 189 F.3d 868 (9th Cir. 1999) "[I]njunctive relief is available under the Federal Trademark Dilution Act if a plaintiff can establish that (1) its mark is famous, (2) the defendant is making commercial use of the mark in commerce, (3) the defendant's use began after the plaintiff's mark became famous; and (4) the defendant's use presents a _likelihood of dilution_ of the distinctive value of the mark." _Avery Dennison_, 189 F.3d at 873-74 (emphasis added) (citing _Panavision Int'l, L.P. v. Toeppen_, 141 F.3d 1316, 1324 (9th Cir. 1998))

In _Moseley_, the Supreme Court resolved a split amongst the Circuits and concluded that a showing of "actual dilution, rather than a likelihood of dilution," is required for the owner of a famous mark to be entitled to injunctive relief. 537 U.S. at 433. The Court's interpretation of the statute did not disturb the first three elements of a trademark dilution claim as set forth in _Avery Dennison_.

1    After presentation of the evidence by the parties,

2  this Court granted Horphag's motion for judgment as a

3  matter of law under Federal Rule of Civil Procedure 50 on

4  Horphag's federal trademark dilution claim after finding

5  that each of the four <u>Avery Dennison</u> elements had been

6  satisfied and that a reasonable trier of fact could not

7  find for Mr  Garcia on this claim

8       This Court further finds that Horphag's
         registered U S  Pycnogenol® trademark is a
9       famous trademark within the nutritional
         supplement field   Defendant has made ubiquitous
10      and pervasive commercial use of Horphag's
         registered U S  trademark Pycnogenol® on
11      defendant's websites that provide information
         about nutritional supplements and/or offer for
12      sale other products that do not contain
         Horphag's Pycnogenol® product          These
13      ubiquitous and pervasive uses commenced after
         the Pycnogenol® trademark became famous, and
14      have diluted the distinctive quality of
         Horphag's registered U S  trademark Pycnogenol®
15      by diminishing the capacity of the trademark to
         identify and distinguish Horphag's goods from
16      those of another

17  [Aug  28, 2001 Judgment ¶ 4 ]   The Ninth Circuit vacated

18  the judgment and remanded for reconsideration in light of

19  <u>Moseley</u>   <u>Horphag</u>, 337 F 3d at 1041.

20

21    <u>Moseley</u> did not alter the first three <u>Avery Dennison</u>

22  elements and, therefore, the Court's reconsideration of

23  its judgment in light of <u>Moseley</u>, as ordered by the Ninth

24  Circuit, does not require a re-examination of the

25  evidence in support of those elements   In deciding this

26  Motion and reconsidering its judgment on Plaintiff's Rule

27

28

1 | 50 Motion, the Court proceeds directly to the fourth
2 | element, actual dilution

4 | **B.   LEGAL STANDARD**

5 |     Plaintiff moves for summary judgment and
6 | reconsideration of its trademark dilution claim   [Mot
7 | at 1 1-5 ]   Though the posture is somewhat different, a
8 | district court must apply equivalent standards in ruling
9 | on motions for summary judgment and motions for judgment
10 | as a matter of law

12 |     Rule 56(c) of the Federal Rules of Civil Procedure
13 | provides that summary judgment "shall be rendered
14 | forthwith if the pleadings, depositions, answers to
15 | interrogatories, and admissions on file, together with
16 | the affidavits, if any, show that there is no genuine
17 | issue as to any material fact and that the moving party
18 | is entitled to a judgment as a matter of law "   This
19 | standard mirrors the standard for judgement as a matter
20 | of law under Federal Rule of Civil Procedure 50(a), which
21 | is that "the trial judge must direct a verdict if, under
22 | the governing law, there can be but one reasonable
23 | conclusion as to the verdict "   <u>Anderson</u>, 477 U S  at 250
24 | (citing <u>Brady v  Southern R  Co.</u>, 320 U S  476, 479-480
25 | (1943))   Stated in the negative, neither summary
26 | judgment nor judgment as a matter of law will lie if the
27 | ///

1  evidence is such that a reasonable jury could return a
2  verdict for the nonmoving party.  Id at 248-50

4      In ruling on either motion, a district court is not
5  free to weigh the parties' evidence or to pass on the
6  credibility of witnesses or to substitute its judgment of
7  the facts for that of the jury.  Reeves v Sanderson
8  Plumbing Products, Inc., 530 U.S. 133, 150 (2000)
9  (considering the "analogous" contexts of Rule 50 and Rule
10 56 motions and concluding that in both cases "the court
11 must draw all reasonable inferences in favor of the
12 nonmoving party, and it may not make credibility
13 determinations or weigh the evidence")  "It is the jury,
14 not the court, which  .  weighs the contradictory
15 evidence and inferences, judges the credibility of
16 witnesses, receives expert instructions, and draws the
17 ultimate conclusion as to the facts.        Courts are
18 not free to reweigh the evidence and set aside the jury
19 verdict merely because the jury could have drawn
20 different inferences or conclusions or because judges
21 feel that other results are more reasonable "  Tennant v
22 Peoria & P U  Ry., 321 U S  29, 35 (1944), Anderson, 477
23 U S. at 255

25      If Plaintiff's Motion is construed as a motion for
26 reconsideration of its earlier motion for judgment as a
27 matter of law, then the Court's analysis would be limited
28

1  to the evidence presented at trial  This, however, would
2  deny the parties the opportunity to offer evidence in
3  support of the element of actual dilution as defined in
4  Moseley  Therefore, the Court must construe Plaintiff's
5  Motion as a motion for summary judgment on the sole issue
6  of actual dilution
7
8    A motion for summary judgment shall be granted when
9  "there is no genuine issue as to any material fact" and
10 "the moving party is entitled to judgment as a matter of
11 law." Fed  R. Civ. P. 56(c), Anderson v. Liberty Lobby,
12 Inc., 477 U S  242, 247-48 (1986)  The moving party must
13 show that "under the governing law, there can be but one
14 reasonable conclusion as to the verdict " Anderson, 477
15 U.S  at 250.
16
17   Generally, the burden is on the moving party to
18 demonstrate that it is entitled to summary judgment
19 Margolis v  Ryan, 140 F 3d 850, 852 (9th Cir  1998),
20 Retail Clerks Union Local 648 v. Hub Pharmacy, Inc , 707
21 F 2d 1030, 1033 (9th Cir  1983)  The moving party bears
22 the initial burden of identifying the elements of the
23 claim and evidence that it believes demonstrates the
24 absence of an issue of material fact  Celotex Corp  v
25 Catrett, 477 U S  317, 323 (1986)
26 ///
27 ///
28

A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at 248.   In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party.  <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135 (9th Cir. 1991), <u>T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987)

## C.   ACTUAL DILUTION

### 1.   Uncontroverted Facts

In reviewing the evidence presented to the jury in the July, 2001 trial, as well as additional evidence presented by the parties in the form of declarations, the Court finds the following facts to be uncontroverted and relevant to the issue of actual dilution [4]

Mr. Garcia's infringement of Horphag's trademark resulted from Mr. Garcia's use of the word "Pycnogenol," which is identical to Horphag's registered trademark Pycnogenol®, as metatags on Internet websites owned,

---

[4] The Court declines to adopt as uncontroverted Horphag's proposed facts 1 through 11 because they are not relevant to the issue of actual dilution and, consequently, the Court need not rule on Mr. Garcia's objections to those proposed facts   [<u>See</u> Plaintiff's Statement of Uncontroverted Facts ("Pl.'s Facts") ¶¶ 1-11; Defendant's Response to Plaintiff's Statement of Uncontroverted Facts and Statement of Genuine Issues of Material Facts ("Def.'s Facts") ¶¶ 1-11, 24, 26 ]

1  operated, managed, or otherwise affiliated with Mr

2  Garcia   [Aug  28, 2001 Judgment ¶ 2, aff'd, Horphag, 337

3  F.3d at 1042] [5]

4

5      Mr  Garcia is an entrepreneur who used Horphag's

6  registered trademark, "Pycnogenol," as a metatag on his

7  websites, and textually within his websites, to lure

8  Internet users interested in Horphag's product to his

9  websites where he offers for sale his own competing

10 products   [Aug  28, 2001 Judgment ¶ 4; Declaration of

11 Clyde A. Shuman ("Shuman Decl ") Ex  8 (trial tr ) at

12 131 13-16, Ex  7 (trial tr ) at 123.13-17 ]  These

13 metatags are analogous to misleading or deceptive

14 billboards or road signs which lead customers interested

15 in Horphag's Pycnogenol® to websites not associated with

16 Pycnogenol®   [Shuman Decl. Ex  13 (trial tr ) at 277 14-

17 21; Ex  15 (trial tr ) at 129 6-13 ("Q  Now, if a

18 customer wanted to purchase Horphag's Pycnogenol product

19 and he ended up at one of your websites where you sell

20 the competing product, the customer would be looking at

21

22      [5] Mr  Garcia's relevance objections to these facts
23 are overruled   [See Def 's Facts ¶¶ 12-13 ]  As
   discussed below, the identity of the word used by Mr
24 Garcia to Horphag's registered trademark Pycnogenol® is
   relevant to the question of actual dilution.  Mr  Garcia
25 disputes the fact by citing the Court's July 24, 2000
   Order denying summary judgment on the trademark
26 infringement claim   [See Opp'n at 13 26-14 2 ]  This
   Order, however, was followed by a trial and a subsequent
27 order granting Horphag judgment as a matter of law.  The
   Court's finding of a genuine issue of material fact at
28 that earlier stage has no bearing on this Motion

1 the wrong website, wouldn't he, if he wanted Horphag's

2 Pycnogenol product? A   [Mr  Garcia] He will be looking

3 at the wrong website ") ]

4

5     When a search for "Pycnogenol" is conducted through

6 an Internet search engine, Mr  Garcia's websites appear

7 at the top of the list of search results because he has

8 used "Pycnogenol" metatags and references within the

9 websites to "Pycnogenol" to give weight to his websites

10 in such a search.  [Id  Ex  9 (trial tr ) at 293 10-19,

11 Ex. 10 (trial tr ) at 297 19-299 1 ]  "Pycnogenol"

12 appears frequently in Mr  Garcia's websites to give more

13 weight to the metatags in a search.  [Id  Ex. 14 (trial

14 tr ) at 294 8-23 ]

15

16     Mr. Garcia's websites lure visitors through metatags

17 and the use of the trademark "Pycnogenol "  [Id  Ex  16

18 (trial tr.) at 48.1-12.]  A visitor looking for Horphag's

19 Pycnogenol® may end up on one of Mr. Garcia's websites

20 where there is confusing and contradictory information

21 about the two products   [Id , Ex. 18 (trial tr ) at

22 53 6-12.]  Scientific evidence relating to Pycnogenol® is

23 presented in relation to competing products that are not

24 Pycnogenol®   [Id  Ex  16 (trial tr ) at 48 1-12 ]  For

25 instance, on one of Mr  Garcia's websites,

26 "healthierlife com," there appears a quote by Dr  Richard

27 Passwater which has been altered.  [Id  Ex  6 (trial tr )

28

1   at 238-239 ]  The original begins, "Pycnogenol has not
2   only withstood the test of time        "  [Id at 239 1-
3   2.]  Mr. Garcia altered the quote so that the following
4   appeared on heathierlife.com: "Masquelier's Pycnogenol
5   has not only withstood the test of time         "  [Id at
6   239:1-7.]  Dr Passwater's book, from which the quote is
7   taken, states that he is referring to Horphag's product,
8   Pycnogenol®   [Id at 239·15-18 ]  Mr Garcia's website
9   does not acknowledge that the quotation has been altered
10  [Id 239·19-24 ]

11

12      Horphag is concerned that the name "Pycnogenol" may
13  become generic.  [Id Ex  17 (trial tr ) at 58 17-22 ]
14  Horphag has made efforts to ensure that customers
15  identify the trademark Pycnogenol® with the product
16  [Id at 58 23-59 1 ]

17

18      The overall effect of Mr. Garcia's websites on
19  Horphag's Pycnogenol market in the United States has been
20  "very damaging to the trust [Horphag] created in the
21  market, to the value that [Horphag] had in [its]
22  trademark, to the goodwill that [Horphag] had from the
23  American public.  It put doubt on the science that
24  [Horphag was] providing the public with  It was
25  distracting and influencing [Horphag's] relations with
26  [its] customers  And at the end of the day, the whole
27  thing cost [Horphag] sales "  [Id. Ex  19 (trial tr ) at
28

                              14

1  94 2-13 ][6]  Horphag has presented no survey evidence

2  demonstrating this impact on consumers

3

4      **2.  Analysis**

5      Horphag argues that its Motion should be granted

6  because the "[u]ncontroverted trial testimony established

7  that customers using the Internet to search for

8  PYCNOGENOL were unable to distinguish between Garcia's

9  use and Horphag's use of Pycnogenol®       which

10  negatively impacts on the value of Horphag's Pycnogenol®

11  trademark either through tarnishment of Horphag's

12  trademark or by blurring the distinction between Garcia's

13  use of the mark and his goods and Horphag's Pycnogenol®

14  trademark "  [Pl 's Facts ¶ 15 ]  This establishes

15  "actual dilution" under <u>Moseley</u>, Horphag argues, because

16  direct evidence of dilution is not necessary where, as

17  here, the junior and senior marks are identical    [Mot

18  at 3 19-4 3, Pl.'s Facts ¶ F ]  Mr  Garcia disagrees with

19  this interpretation of <u>Moseley</u>   [<u>See</u> Opp'n at 6 13-

20  7·15 ]

21

22

23

24

25  ────────────────

26      [6] The Court declines to adopt Horphag's proposed
facts 14 and 16 because these contain the legal
conclusion that the Ninth Circuit has ordered this Court

27  to reconsider in light of <u>Moseley</u>   The Court therefore
need not rule of Mr. Garcia's objections to these

28  proposed facts

1    In <u>Moseley</u>, the Supreme Court interpreted the FTDA to

2 require "actual dilution." 537 U.S. at 433   The Court

3 explained, however·

4       Of course, that does not mean that the
        consequences of dilution, such as an actual loss
5       of sales or profits, must also be proved.     .
        [A]t least where the marks at issue are not
6       identical, the mere fact that consumers mentally
        associate the junior user's mark with a famous
7       mark is not sufficient to establish actionable
        dilution    .    [S]uch mental association will
8       not necessarily reduce the capacity of the
        famous mark to identify the goods of its owner,
9       the statutory requirement for dilution under the
        FTDA.        "Blurring" is not a necessary
10      consequence of mental association    (Nor, for
        that matter, is "tarnishing ")
11
<u>Moseley</u>, 537 U.S. at 433-34
12

13
14    In reaching this interpretation of the FTDA, the

15 Court considered the stated purpose of the bill that was

16 before the Subcommittee on Courts and Intellectual

17 Property of the House Judiciary Committee in 1995  "to

18 protect famous trademarks from subsequent uses that blur

19 the distinctiveness of the mark or tarnish or disparage

20 it, even in the absence of a likelihood of confusion "

21 <u>Id</u> at 431 (citing H.R. Rep  No. 104-374 at 2 (1995),

22 U.S. Code Cong  & Admin  News 1995 at 1029-30)

23
24    The <u>Moseley</u> Court concluded that though the opening

25 of a store named "Victor's Secret" likely led customers

26 to make a mental association with the famous trademark

27 "Victoria's Secret," there was a "complete absence of

28 evidence of any lessening of the capacity of the

1  VICTORIA'S SECRET mark to identify and distinguish goods
2  or services sold in Victoria's Secret stores or
3  advertised in its catalogs " *Id* at 434  The Court also
4  noted that the expert retained by Victoria's Secret had
5  not commented on the impact of the use of Victor's Secret
6  on the strength of the Victoria's Secret mark  *Id*
7
8      The Court concluded by acknowledging the concern
9  expressed by the *amici* that consumer surveys and other
10 means of demonstrating actual dilution may be expensive,
11 unreliable, and difficult to obtain  *Id*  It observed
12 that "[i]t may well be, however, that direct evidence of
13 dilution such as consumer surveys will not be necessary
14 if actual dilution can reliably be proved through
15 circumstantial evidence — the obvious case is one where
16 the junior and senior marks are identical "  *Id*
17
18     The new *Moseley* standard was recently applied in
19 *Playboy Enters., Inc  v  Netscape Comms  Corp* , Nos  00-
20 56648, 00-56662, 2004 WL 57738 (9th Cir  Jan  14, 2004)
21 There, with respect to blurring, the plaintiff introduced
22 evidence suggesting that a significant number of Internet
23 users assume that advertisements are sponsored or somehow
24 affiliated with the plaintiff after a search using the
25 plaintiff's trademarked terms  *Playboy*, 2004 WL 57738,
26 at *9  With respect to tarnishing, the plaintiffs
27 introduced evidence tending to show that consumers
28

17

consider the materials in the banner ads to be inferior
to the materials offered by the plaintiffs and that
consumers are confused regarding sponsorship of the
banner ads   Id.  Defendants did not counter the evidence
as to either blurring or tarnishing   Id   The Ninth
Circuit held that this evidence was insufficient to
establish actual dilution in the summary judgement
context.  Id  at *10

Horphag argues that Mr  Garcia has blurred the
distinctiveness of, as well as tarnished, Horphag's
Pycnogenol trademark.  [Mot  at 24 3-6 ]   Horphag argues
that the Pycnogenol mark has been tarnished by the use of
the mark to refer to products other than Horphag's
Though there is evidence that the competing products
contained different ingredients, Horphag has not
presented any evidence that a consumer's use of Mr
Garcia's product leaves him with a lesser opinion of
Pycnogenol® than he would otherwise have had.  There
remains a genuine issue of material fact as to whether
the Pycnogenol mark has been tarnished through Mr
Garcia's use of the mark

Horphag next argues that blurring has been
established in two ways   First, Mr  Garcia's use of
"Pycnogenol" metatags in his websites lures Internet
users interested in Horphag's product to Mr  Garcia's

1  websites where he offers competing products for sale
2  Though this may cause some "initial interest confusion,"
3  Mr. Garcia's use of metatags does not alone establish
4  that the distinctiveness of the Pycnogenol mark is
5  diminished through this luring   Though previously
6  unaware consumers may be informed of the availability of
7  competing products, this does not in itself indicate that
8  the value of the trademark has been reduced   At worst,
9  consumers may wrongly assume that Mr  Garcia's websites
10 are somehow affiliated with Horphag's Pycnogenol.  As
11 noted in _Playboy_, this is not sufficient to establish
12 actual dilution under _Moseley_ at the summary judgment
13 stage   _Playboy_, 2004 WL 57738, at *9

14

15     Second, Horphag argues that blurring is established
16 through Mr. Garcia's use of the term "Pycnogenol" to
17 describe products other than Horphag's and by his
18 presentation of scientific evidence relating to Horphag's
19 Pycnogenol® in support of competing products   These
20 facts, considered in the context of Mr  Garcia's use of
21 "Pycnogenol" metatags, establish actual dilution through
22 blurring

23

24     Internet users searching for information on
25 Pycnogenol® are lured onto Mr  Garcia's websites   Once
26 there, the users are confronted with confusing and
27 contradictory information about the two products.  For

28

instance, on one of Mr  Garcia's websites,
"healthierlife com," there appears a quote by Dr
Passwater which has been altered  The original begins,
"Pycnogenol has not only withstood the test of time
 "  Mr  Garcia altered the quote so that the following
appeared on heathierlife com· "Masquelier's Pycnogenol
has not only withstood the test of time         ."  Dr.
Passwater's book, from which the quote is taken, states
that the research refers to Horphag's product,
Pycnogenol®.  Mr. Garcia's website does not acknowledge
that the quotation has been altered  In this way, Mr
Garcia has misled consumers to associate the term
"Pycnogenol" with both Horphag's and Mr  Garcia's
products

    Mr  Garcia repeatedly emphasizes the language in
Moseley suggesting that consumers' mental association of
the junior user's mark with the famous mark is not
sufficient to establish actual dilution   [Opp'n at 6 15-
7 15 ]  This case, however, is distinguishable from
Moseley   In Moseley, customers associated a store named
"Victor's Secret" with the famous name "Victoria's
Secret "  537 U S. at 434.  The Court found that dilution
had not been established because there was no evidence
"of any lessening of the capacity of the VICTORIA'S
SECRET mark to identify and distinguish goods or services
sold in Victoria's Secret stores "  Id

1  Such a gap in the evidence does not exist in this
2  case   The use of the identical term "Pycnogenol" leads
3  consumers not only to associate the "true" Pycnogenol
4  with Mr. Garcia's product, but also leads them to use the
5  same name to refer to both products   Horphag's concern
6  that the name "Pycnogenol" may become generic has become
7  a reality through Mr  Garcia's insistence that the name
8  not only refers to Horphag's product but to his product
9  as well.  Mr  Garcia has brought about a "lessening of
10 the capacity of the [Pycnogenol] mark to identify and
11 distinguish" Horphag's product   Moseley, 537 U S  at
12 434 [7]  The Moseley Court foresaw this different result
13 when it observed that when the junior and senior marks
14 are identical, consumer surveys may not be necessary to
15 establish that actual dilution has occurred.   Id

16

17  Internet users lured onto Mr  Garcia's websites
18 through "Pycnogenol" metatags, must leave with a less

19

20        [7] Mr  Garcia claims that "Horphag's trademark is
21 *blurred* in the American research books and consequently
   in the United States marketplace" and that "none of this
22 blurring [is] attributable to Garcia "  [Opp'n at 11 9-12
   (emphasis in original) ]  In other words, Mr  Garcia
23 argues that he cannot be liable for trademark dilution
   because the mark was diluted before he used it   In this
24 vein, Mr  Garcia also argues that Horphag improperly
   obtained registration in the United States for
25 Pycnogenol, forcing the makers of the "original
   Pycnogenol" to register a different trademark for their
26 product.  [Garcia Decl  ¶¶ 4, 5 ]  These, however, are
   attacks against the first Avery Dennison element of
27 "famousness "  As explained above, the Court's previous
   ruling as to this element was not disturbed by the
28 appellate court and need not be reconsidered

21

1  clear understanding than when they entered of what the

2  "Pycnogenol" name refers to   Mr  Garcia has reduced

3  Horphag's control over the unique association between the

4  Pycnogenol mark and product [8]  Thus, Plaintiff has

5  established blurring, and Horphag's evidence that this

6  blurring has cost it sales is uncontroverted [9]  No

7  reasonable factfinder could find that there has been no

8  actual dilution

9

10 **D.   AFFIRMATIVE DEFENSES**

11     Mr  Garcia suggests that the Motion should be denied

12 because he has presented evidence in support of a

13 "comparative advertising" affirmative defense   [See

14 Opp'n at 5.15-19, 8 9-27 ]  See also, Mattel, Inc  v  MCA

15 Records, Inc , 296 F 3d 894, 904 (9th Cir. 2002)

16 (recognizing "comparative advertising" and "noncommercial

17

18 _____

19     [8] Justice Kennedy pointed out in his concurring
   opinion that the victim of trademark dilution need not
20 wait until the harm is complete because the "essential
   role of injunctive relief is to 'prevent future wrong '"
21 Moseley, 537 U S. at 436 (Kennedy, J., concurring)   "If
   a mark will erode or lessen the power of the famous mark
22 to give customers the assurance of quality and the full
   satisfaction they have in knowing they have purchased
23 goods bearing the famous mark, the elements of dilution
   may be established "  Id.

24     [9] Mr. Garcia refers to this evidence as "bald
   accusations" but does not offer any evidence in rebuttal
25 [Opp'n at 13:13 ]  Mr. Garcia complains that "Horphag put
   on no testimony from consumers or survey evidence."  Such
26 evidence, however, is not necessarily required where the
   junior and senior marks are identical, as they are in
27 this case   See Moseley, 537 U S. at 434   Mr  Garcia
   does not controvert a fact by merely labeling the
28 supporting evidence "bald "

1  use" affirmative defenses under the FTDA).  The <u>Moseley</u>
2  opinion, however, does not alter the existing law as to
3  these affirmative defenses and, therefore, the Court's
4  previous ruling as to the absence of any affirmative
5  defense was not disturbed by the Ninth Circuit's vacation
6  of the judgment

7

8       Furthermore, the Ninth Circuit affirmed the Court's
9  ruling on the absence of an affirmative defense as to
10  Plaintiff's trademark infringement claim   <u>See</u> <u>Horphag</u>,
11  337 F 3d at 1041.  It acknowledged the availability of a
12  defense where a defendant refers to a particular product
13  "for purposes of comparison, criticism, [or] point of
14  reference "  <u>Id</u>  The Court found, however, that Mr
15  Garcia could not meet an essential criterium of the
16  defense, namely, that "the user must do nothing that
17  would, in conjunction with the mark, suggest sponsorship
18  or endorsement by the trademark holder "  <u>Id</u> (citing <u>New</u>
19  <u>Kids of the Block v  News Am  Publ'g, Inc.</u>, 971 F 2d at
20  308 (9th Cir. 1992)).  The Court found that "Garcia's
21  references to Pycnogenol spawn confusion as to
22  sponsorship and attempt to appropriate the cachet of the
23  trademark Pycnogenol to his product."  <u>Id</u>  As the law of
24  the case, this also bars any attempt to defeat
25  Plaintiff's trademark dilution claim through a
26  "comparative advertising" affirmative defense   <u>See</u> <u>Old</u>
27  <u>Person v. Brown</u>, 312 F 3d 1036, 1039 (9th Cir  2002)
28

1   ("Under the 'law of the case' doctrine, a court is

2   ordinarily precluded from reexamining an issue previously

3   decided by the same court, or a higher court, in the same

4   case.") (quoting Richardson v. United States, 841 F 2d

5   993, 996 (9th Cir 1988))

6

7       Mr  Garcia also attempts to bring before the Court

8   the issue of comity and collateral estoppel as to a

9   decision by a French court involving Horphag and the

10  Pycnogenol trademark.  [See Opp'n at 14 4-27, Declaration

11  of Larry Garcia ("Garcia Decl.") Ex  14.]  This Court

12  found the French court's decision inadmissible in its

13  July 24, 2001 Order Re. Admissibility of New Proposed

14  Trial Exhibits   Mr  Garcia acknowledges that he raised

15  the issue again on appeal but the Ninth Circuit did not

16  grant any relief based on this argument   [See Opp'n at

17  14·5.]  The Court need not reconsider its previous ruling

18  and furthermore finds that the issue is not relevant to

19  this Motion

20

21  **E.   ATTORNEYS' FEES**

22      So that it may review all requests for attorneys'

23  fees and issue one complete order, the Court defers

24  ruling on the reinstatement of its August 29, 2001 award

25  of attorneys' fees until after consideration of any

26  supplemental motion for attorneys' fees following this

27  Order

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.   CONCLUSION

For the foregoing reasons, the Court finds that Horphag has established the element of actual dilution necessary to a trademark dilution claim and that there remain no genuine issues of material fact   Horphag's Motion for Summary Judgment is GRANTED

**IT IS SO ORDERED.**

Dated· *January 22, 2004*

VIRGINIA A  PHILLIPS
United States District Judge